IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IRENE SARAH YALCH,

    Plaintiff,

v.                                                                                             1:16-cv-01167-LF

NANCY A. BERRYHILL,[1]
Deputy Commissioner for Operations
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Irene Sarah Yalch's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 19), which was fully briefed on August 23, 2017. *See* Docs. 21, 24, 25. The parties consented to my entering final judgment in this case. Docs. 4, 7, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred in failing to properly consider the opinion of treating nurse practitioner Melanie Robbins. I therefore GRANT Ms. Yalch's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the Deputy Commissioner for Operations of the Social Security Administration, is automatically substituted for the former Acting Commissioner of the Social Security Administration, Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

2

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.  Background and Procedural History

Ms. Yalch was born in 1985, completed high school, and worked as a cashier and a daycare teacher. AR 186, 274.[4] Ms. Yalch filed applications for disability insurance benefits and supplemental security income on September 11, 2012, alleging disability since February 15, 2012 due to back pain, bilateral arm and hand pain, bilateral knee spurs, bilateral arthritis in the

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

feet, and endometriosis. AR 186–98, 273. The Social Security Administration ("SSA") denied her claims initially on November 6, 2012. Doc. 12-1 at 2; AR 119–22. The SSA denied her claims on reconsideration on June 28, 2013. AR 124–29. Ms. Yalch requested a hearing before an ALJ. AR 132–33. On March 3, 2015, ALJ Ann Farris held a hearing. AR 30–68. ALJ Farris issued her unfavorable decision on June 23, 2015. AR 9–29.

At step one, the ALJ found that Ms. Yalch had not engaged in substantial, gainful activity since February 15, 2012, her alleged onset date. AR 14. At step two, the ALJ found that Ms. Yalch suffered from the following severe impairments: "status post right knee arthroscopy; fibromyalgia; depression; and posttraumatic stress disorder." *Id.* The ALJ found that Ms. Yalch also had several nonsevere impairments: degenerative disc disease of the lumbar spine, bilateral knee osteoarthritis, status post foot surgery, endometriosis, migraines, and obesity. AR 14–15. At step three, the ALJ found that none of Ms. Yalch's impairments, alone or in combination, met or medically equaled a Listing. AR 15–17. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Yalch's RFC. AR 17–23. The ALJ found Ms. Yalch had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), as the claimant is able to lift and carry ten pounds occasionally; is able to stand or walk up to two hours in an eight-hour workday; and is able to sit for up to six hours in an eight-hour workday. However, the claimant can never climb ladders or scaffolds, kneel, crouch, and crawl. The claimant can only occasionally climb stairs, balance, and stoop. The claimant can only have occasional and superficial interactions with the general public.

AR 17–18.

At step four, the ALJ concluded that Ms. Yalch was unable to perform her past relevant work as a childcare attendant or a cashier. AR 23. The ALJ found Ms. Yalch not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as document preparer, addresser, and table worker. AR 23–24. On July 9,

4

2015, Ms. Yalch requested review of the ALJ's unfavorable decision by the Appeals Council. AR 6–7. On August 23, 2016, the Appeals Council denied the request for review. AR 1–3. Ms. Yalch timely filed her appeal to this Court on October 21, 2016. Doc. 1.[5]

### IV. Ms. Yalch's Claims

Ms. Yalch raises five arguments for reversing and remanding this case: (1) the ALJ failed to obtain a medical expert opinion about whether Ms. Yalch's fibromyalgia medically equaled a listing; (2) the ALJ failed to properly consider the opinion of treating nurse practitioner Melanie Robbins; (3) the ALJ failed to properly consider the opinion of treating nurse practitioner Jeanne Corns; (4) the ALJ failed to complete a function-by-function assessment of Ms. Yalch's work-related mental abilities; (5) the ALJ's step-five determination is not supported by substantial evidence. *See* Doc. 19. I find that the ALJ erred by failing to properly consider the opinion of treating nurse practitioner Melanie Robbins. Because I remand based on the ALJ's failure to properly analyze this opinion, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

#### A. The ALJ Failed to Properly Consider the Opinion of Treating Nurse Practitioner Melanie Robbins.

Ms. Yalch argues that the ALJ failed to provide "adequate reasons, supported by clear reasoning," for discounting the opinion of Certified Nurse Practitioner ("CNP") Melanie Robbins. Doc. 19 at 13. She asserts that the ALJ gave only boilerplate reasons "without any support or analysis" for rejecting CNP Robbins' opinion. Doc. 24 at 5. The Commissioner

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2–3.

5

responds that the ALJ was not required to "discuss explicitly a non-medical opinion so long as it is evident that [s]he considered it." Doc. 21 at 8 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012)). For the reasons discussed below, I agree with Ms. Yalch.

CNP Robbins is considered an "other source" under the regulations. *See* SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006).[6] An "other source" cannot give a "medical opinion," cannot establish the existence of a medically determinable impairment, and is not considered a "treating source[]." *Id*. at *2. However, "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Opinions from "other sources" are weighed using the same factors used to weigh opinions from acceptable medical sources. *Id.* at *4–*5; *Frantz*, 509 F.3d at 1302. Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted); 20 CFR §§ 404.1527(c), 416.927(c) (both effective Aug. 24, 2012 to March 26, 2017). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

---

[6] SSR 06-03p was rescinded effective March 27, 2017. *See* Federal Register Notice Vol. 82, No. 57, p. 15263, effective March 27, 2017. The ALJ's decision was issued on June 23, 2015, before SSR 06-03p was rescinded, making it applicable in this case.

In *Frantz v Astrue*, the Tenth Circuit held that an ALJ erred by not discussing what weight he gave an "other source" opinion on the severity and functional effects of the claimant's limitations. 509 F.3d 1299, 1302 (10th Cir. 2007). It also is error for an ALJ to ignore evidence from an "other source" opinion which would support a finding of disability, "while highlighting evidence favorable to the finding of nondisability." *Id.*; *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

In this case, CNP Robbins completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) on October 16, 2013, in which she opined that Ms. Yalch could occasionally and frequently lift less than ten pounds, could stand at least 2 hours in an 8-hour workday, and could sit less than 6 hours in an 8-hour workday. AR 657. She also opined that Ms. Yalch had limited ability to push and pull with both her upper and lower extremities. *Id*. She believed that Ms. Yalch could never kneel, crouch, or crawl, and could only occasionally stoop. *Id*. She stated that Ms. Yalch could not maintain physical effort for long periods of time without the need to decrease activity or pace, or to rest intermittently due to pain, fatigue, and orthostatic intolerance. *Id*. In addition, CNP Robbins found that Ms. Yalch's non-physical work activities would be limited by pain, fatigue, sleep disturbances, and mental problems. *Id*.

The ALJ did not state what weight she gave CNP Robbins' opinion. Instead, the ALJ merely stated the following:

> As for the opinion evidence, in October 2013, Melanie Robbins, a certified nurse practitioner, completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form (Exhibit 14F/2). Ms. Ro[b]bins opined the claimant can perform sedentary work; however, the nurse practitioner believed the claimant can only sit less than six hours in an eight-hour workday with postural and pushing and pulling limitations (Exhibit 14F/2). Ms. Robbins also concluded

7

the claimant cannot maintain physical effort for long periods without the need to
decrease activity or pace or rest intermittently because of pain, fatigue, and
orthostatic intolerance (Exhibit l 4F/2). Additionally, the nurse practitioner found
the claimant's non-physical work activities are affected by symptoms including
pain, fatigue, sleep disturbance, and mental conditions (Exhibit 14F/2). The
opinion of a nurse practitioner is not by an acceptable medical source and the
opinion must be considered an opinion of "other sources" according to 20 CFR
404.1513. Furthermore, the treatment connection between the nurse practitioner
and claimant is unknown and the opinion is not supported by the medical
evidence including physical examinations and diagnostic images and studies
revealing only minimal abnormalities.

AR 21.

Ms. Yalch argues that the ALJ did not give sufficient reasons for discounting CNP Robbins' opinion. I agree. Although I do not agree with Ms. Yalch's assertion that the reasons the ALJ gave are "not facially valid," *see* Doc. 19 at 14, I find that the reasons the ALJ gave for discounting CNP Robbins' opinion do not allow the Court to follow the ALJ's reasoning, and are not supported by substantial evidence.

The evidence does not support the first reason the ALJ gave for discounting CNP Robbins' opinion. The length, nature and extent of the treatment relationship is a valid factor for the ALJ to consider in deciding what weight to give an "other source" opinion. *See* 20 CFR §§ 404.1527(c)(2), 416.927(c)(2) (both effective Aug. 24, 2012 to March 26, 2017). However, the record does not support the ALJ's assertion that the treatment relationship between CNP Robbins and Ms. Yalch was "unknown." Ms. Yalch testified at the hearing that she had been receiving treatment from CNP Robbins for over four years, seeing her at least every three months, but sometimes more often. AR 50. The record also shows that CNP Robbins was Ms. Yalch's primary care provider: she provided numerous referrals for Ms. Yalch, AR 299, 301, 328, 332, 436, 439, 462–65, 470–71, 483, and received progress and treatment notes from other care providers, AR 324, 326, 331, 334, 423, 425, 427, 528, 531, 535, 674. The record also

reflects that Ms. Yalch regularly saw CNP Robbins. *See* AR 460–66 (11/13/2012 visit), 467–73 (12/3/2012 visit), 480–88 (2/4/2013 visit), 500–04 (5/3/2013 visit), AR 515–24 (5/22/2013 visit). Understandably, the Commissioner offers little defense of the ALJ's first reason for rejecting CNP Robbins' opinion, stating merely that CNP Robbins cannot be considered a "treating source," and conceding that CNP Robbins saw Ms. Yalch throughout the relevant time period. Doc. 21 at 10. But the Commissioner argues that even if the first reason the ALJ gave for rejecting CNP Robbins' opinion is unsupported, the second reason is sufficient on its own. *Id*. For the reasons discussed below, I disagree.

The second reason the ALJ gave for discounting CNP Robbins' opinion is that "the opinion is not supported by the medical evidence including physical examinations and diagnostic images and studies revealing only minor abnormalities." AR 21. The degree to which an opinion is supported by relevant evidence, and the "consistency between the opinion and the record as a whole," are facially valid factors for the ALJ to consider when determining what weight to give an opinion. 20 CFR §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4) (both effective Aug. 24, 2012 to March 26, 2017). However, in Ms. Yalch's case, the ALJ's boilerplate explanation does not point to any specific medical evidence, and offers no explanation of how the opinion is not supported or consistent. Given the ALJ's lack of explanation, and the fact that the ALJ found Ms. Yalch had a severe impairment of fibromyalgia, AR 14, the ALJ's second reason for rejecting CNP Robbins' opinion is not sufficient.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). Under SSR 12-2p, the objective medical evidence required to prove a medically determinable impairment ("MDI") of

9

fibromyalgia can be assessed using the 1990 ACR Criteria for the Classification of Fibromyalgia, which state that the ALJ may find a claimant has an MDI of fibromyalgia if the claimant has all three of the following:

> (1) A history of widespread pain that has persisted for at least three months (the pain may fluctuate and not always be present);
> (2) At least 11 positive tender points on physical examination (found on all quadrants of the body);
> (3) Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id.* at *2–*3.[7] Fibromyalgia symptoms "wax and wane," and a person with fibromyalgia may have both "bad days and good days." *Id.* at *6. Because the symptoms of fibromyalgia fluctuate, both consultative examiners and ALJs should consider a "longitudinal record" when assessing a claimant's RFC. *Id.* at *5–*6.

Fibromyalgia is not diagnosed through objective findings. *Gilbert v. Astrue*, 231 F. App'x 778, 783–84 (10th Cir. 2007) (unpublished); *Moore v. Barnhart*, 114 F. App'x 983, 990–91 (10th Cir. 2004) (unpublished). Instead, the disease "is diagnosed entirely on the basis of patients' reports and other symptoms." *Moore*, 114 F. App'x at 991 (internal citation and quotation omitted). "The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Priest v. Barnhart*, 302 F. Supp. 2d 1205, 1213 (D. Kan. 2004) (internal citation and quotation omitted); *see also Malloy v. Astrue*, 604 F. Supp. 2d 1247, 1249 (S.D. Iowa 2009) (ALJ erred in rejecting doctor's opinion on the basis that there was "no evidence that muscle atrophy, decreased range of motion, muscle weakness or loss of sensation," as these are not necessarily indicia of fibromyalgia.); *Moore*, 114 F. App'x at 991–92 (internal citation and quotation omitted) (Court noted that people with fibromyalgia "usually

---

[7] The ALJ also may find an MDI of fibromyalgia based on the 2010 ACR Preliminary Diagnostic Criteria. *See* SSR 12-2p, 2012 WL 3104869, at *3.

10

look healthy. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness.").

Further, fibromyalgia is "a variable disorder, which means that symptoms can be different from person to person." Gary W. Jay, MD, *Exams and Tests to Diagnose Fibromyalgia*, PRACTICAL PAIN MANAGEMENT, updated June 21, 2017.[8] For doctors assessing fibromyalgia patients, "[p]hysical examination is unremarkable except that specific, discrete areas of muscle (tender points) often are tender when palpated." Joseph J. Biundo, MD, *Fibromyalgia, Symptoms and Signs*, MERCK MANUAL PROFESSIONAL VERSION, reviewed/revised Feb. 2017.[9] Indeed, doctors are advised to "[s]uspect fibromyalgia when generalized pain and tenderness and fatigue are unexplained or out of proportion to physical and laboratory findings." *Id.*

The Commissioner argues that Ms. Yalch did not apply for disability due to fibromyalgia, "but rather endometriosis, arthritis in her feet, knee spurs, and pain in her back, arms, and hands." Doc. 21 at 11. The Commissioner further argues that the ALJ "could reasonably consider the objective medical evidence in regards to these conditions and did so here." *Id.* (emphasis added). The Court is not persuaded. At step two, the ALJ found that Ms. Yalch had the severe physical impairments of "status post right knee arthroscopy" and "fibromyalgia." AR 14. CNP Robbins based the limitations in her opinion at least in part on these same impairments.

---

[8] https://www.practicalpainmanagement.com/patient/conditions/fibromyalgia/exams-tests-diagnose-fibromyalgia (last accessed April 30, 2018).

[9] https://www.merckmanuals.com/professional/musculoskeletal-and-connective-tissue-disorders/bursa,-muscle,-and-tendon-disorders/fibromyalgia (last accessed April 30, 2018).

*See* AR 657 (listing "knee pain" and "fibromyalgia"). The ALJ did not explain why she thought the "medical evidence including physical examinations and diagnostic images and studies revealing only minimal abnormalities," AR 21, undermined CNP Robbins' opinion regarding the functional limitations that resulted from Ms. Yalch's fibromyalgia. The ALJ did not tie her boilerplate statement to any record evidence, or any particular impairment. Given the ALJ's lack of explanation, and considering the nature of fibromyalgia, the Court finds that the ALJ erred in discounting CNP Robbins' opinion due to a lack of diagnostic images and studies. The ALJ essentially is requiring objective proof that Ms. Yalch has fibromyalgia—a disease which is not diagnosed through objective findings. This is error. *See Gilbert*, 231 F. App'x at 784 ("the lack of objective test findings noted by the ALJ is not determinative of the severity of her fibromyalgia").

The Commissioner claims that "while an ALJ is required to consider other sources' observations, [s]he is not required to discuss explicitly a non-medical opinion so long as it is evident [s]he considered it." Doc. 21 at 8. The case the Commissioner cites to support this assertion, *Keyes-Zachary*, does not stand for such a broad proposition. *Keyes-Zachary* requires the ALJ to explain the amount of weight given to an "other source" opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012).[10] The ALJ in *Keyes-Zachary* failed to explain what weight he gave an "other source" opinion, but the Tenth Circuit found the error to be harmless since the court could "follow the adjudicator's reasoning." *Id*. at 1164 (quoting SSR

---

[10] The Commissioner offers some reasons the ALJ could have found CNP Robbins' opinion was inconsistent with her own treatment notes and the record as a whole. Doc. 21 at 10. However, the ALJ did not find that CNP Robbins' opinion was inconsistent with her treatment notes, nor did the ALJ discuss how CNP Robbins' opinion was inconsistent with the record as a whole. This Court cannot rely on explanations not provided by the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

06-03p, 2006 WL 2329939, at *6). SSR 06-03p requires the ALJ to explain the weight given to "other source" opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p, 2006 WL 2329939, at *6. In Ms. Yalch's case, it is unclear what weight the ALJ gave CNP Robbins' opinion, and the Court is unable to follow the ALJ's reasoning.

In addition, unlike *Keyes-Zachary*, the ALJ's failure to adequately explain what weight she gave CNP Robbins' "other source" opinion is harmful error. As Ms. Yalch points out, CNP Robbins' opinion could "have an effect on the outcome of the case." The ALJ found Ms. Yalch had the RFC to perform sedentary work,[11] to lift and carry ten pounds occasionally, to stand or walk up to two hours in an eight-hour work day, and to sit for up to six hours in an eight-hour workday. AR 17–18. CNP Robbins thought Ms. Yalch was more limited, stating that she could occasionally lift **less than** ten pounds, and could sit **less than** 6 hours in an 8-hour workday. AR 657. CNP Robbins also found Ms. Yalch had limited abilities to push and pull with both her upper and lower extremities. *Id*. The ALJ did not include any limitation in ability to push and pull in Ms. Yalch's RFC. If the ALJ had credited the limitations in CNP Robbins' opinion, Ms.

---

[11] The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

13

Yalch would have had a more restrictive RFC, one which precluded her from doing a full range of sedentary work.[12]

The Commissioner argues that "the ALJ placed at least some weight on Ms. Robbins'[] opinion" because Ms. Robbins' opinion was "generally consistent with the ALJ's physical" RFC. Doc. 21 at 9.[13] The ALJ, however, did not state what parts of CNP Robbins' opinion she credited and why, nor did she explain why she rejected other parts. If the ALJ gave some weight to CNP Robbins' opinion, as the Commissioner argues, it is unclear why the ALJ rejected some parts of the opinion while crediting others. As the Court explained in *Heckel v. Colvin*, 15cv453-LF, 2016 WL 9781164 (D.N.M. Sept. 28, 2016), an ALJ must either adopt all of the moderate or marked limitations assessed by an "other source" provider, or explain her reasons for not doing so. "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010. Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20

---

[12] The Commissioner admits that CNP Robbins found Ms. Yalch could perform "less than sedentary work." Doc. 21 at 9. The ALJ, however, stated that CNP Robbins "opined that claimant can perform sedentary work; however, the nurse practitioner believed the claimant can only sit less than six hours in an eight-hour workday with postural and pushing and pulling limitations." AR 21 (citing AR 657). The ALJ was wrong. CNP Robbins did not opine that Ms. Yalch could do a full range of sedentary work. AR 657.

[13] There is evidence that the ALJ adopted some of the limitations in CNP Robbins' opinion. CNP Robbins found that Ms. Yalch could never kneel, crouch, crawl, and could only occasionally stoop. AR 657. The ALJ included these same limitations in Ms. Yalch's RFC. AR 18.

14

C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). The ALJ's decision here offers no insight into whether the ALJ rejected CNP Robbins' opinion altogether, or if she credited parts of the opinion. The Court is not able to follow the ALJ's reasoning, and the ALJ's weighing of CNP Robbins' opinion is not supported by substantial evidence. Thus, unlike *Keyes-Zachary*, the ALJ's failure to assign a weight to the "other source" opinion is harmful error. This case is remanded so that the ALJ can explain how she weighed CNP Robbins' opinion, and the reasons for that weight.

## VI. Conclusion

The ALJ erred in failing to explain the weight she gave to CNP Robbins' opinion. The Court remands so that the ALJ can explain how she weighed CNP Robbins' opinion, using the proper regulatory factors. The Court does not reach Ms. Yalch's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent